**Carlton JOSEPH, Plaintiff,**

v.

**LOCAL UAW 1097 UNION, Denny Milford, Herman Dailey and Chuck Ishman, Defendants.**

**No. 95–CV–6393L.**

United States District Court, W.D. New York.

March 5, 1996.

Carlton Joseph, Rochester, NY, pro se.

Cathy Creighton, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, James C. Holahan, Harris, Beach & Wilcox,

Rochester, NY, and Daniel Galant, General Motors Corporation, Detroit, MI, for defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Carlton Joseph, appearing *pro se*, commenced this action in New York State Supreme Court, Monroe County. Defendants removed the action to this court pursuant to 28 U.S.C. § 1441, on the ground that this court has original jurisdiction over the action under Section 301 of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185, and under 28 U.S.C. § 1331.

■ Defendants have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment under Rule 56. Since both sides have submitted matters outside the pleadings, I will treat the motion as a motion for summary judgment pursuant to Rule 12(b). Plaintiff has moved to compel joinder of Delphi Automotive Division of General Motors Corporation ("GMC") pursuant to Rule 19(a).

## INTRODUCTION

The complaint alleges that plaintiff was formerly employed by GMC and was a member of the United Auto Workers Local 1097 ("the union"). On September 5, 1989, GMC terminated plaintiff's employment. Plaintiff contends that he sought a grievance hearing pursuant to his collective bargaining agreement ("CBA"), but that the union ignored his requests. Plaintiff alleges that the union thereby breached its obligations under the CBA.

Plaintiff then commenced this action against the union and three individual defendants: Denny Milford and Herman Dailey, both of whom were on the union executive committee; and Chuck Ishman, a "Committeeman" who was responsible for filing grievances during the relevant time period. Plaintiff seeks a declaratory judgment that his termination was in breach of his employment contract, and he requests reinstatement and back pay and benefits.

Defendants removed the action on the ground that this court has original jurisdiction under 29 U.S.C. § 185(a), which confers jurisdiction on district courts over any "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ."

Defendants now move for summary judgment on the following grounds: that plaintiff's claims are time-barred; that plaintiff failed to exhaust his internal union remedies; and that plaintiff has failed to state a cause of action for breach of duty of fair representation under the LMRA.

Plaintiff moves to compel joinder of GMC. He contends that because he seeks reinstatement to his former position, GMC is an indispensable party to this action. GMC opposes the motion solely on the ground that the action is subject to dismissal for the reasons advanced by defendants, and that joinder would therefore be futile.

## FACTUAL BACKGROUND

Plaintiff began working for GMC, and became a member of the union, in 1979. During his employment, his employment was governed by a series of CBAs between the union and GMC.

In July 1989, plaintiff stopped reporting for work. GMC then sent him a notice on August 25, 1989, directing him to report to work. Milford Affidavit Ex. D. The notice warned him that if he did not report within five days after delivery of the notice, he would be terminated pursuant to paragraph 64(d) of the CBA, which provided that an employee would be terminated if he failed to return to work within five days after being notified to report, and failed to give a satisfactory reason for not reporting.

Plaintiff did not report within five days after delivery of the letter, and he was therefore discharged effective September 5, 1989.

There is some dispute about when plaintiff first contacted, or attempted to contact, the union about his discharge. Plaintiff, however, does not appear to dispute defendants' assertion that plaintiff did get in touch with someone at the union in January 1990, and

that he met with defendant Ishman on January 31, 1990. Defendants contend, and again plaintiff does not deny, that Ishman told plaintiff that plaintiff would have to provide a satisfactory reason for his failure to report to work, that plaintiff stated that he would provide such proof, and that Ishman filed a grievance on plaintiff's behalf that same day. Ishman Affidavit Ex. B.

While the grievance was pending, plaintiff sent certain letters and other information to the union in support of his grievance. Plaintiff sent several letters from a therapist at DePaul Mental Health Services ("DePaul") in Rochester. The gist of these letters was that plaintiff had come to DePaul on September 5, 1989 complaining of feelings of depression, and that it became evident that he had problems with substance abuse. Plaintiff was advised to seek evaluation at an appropriate facility and return to DePaul once he had done so. It appears that he did not return to DePaul until sometime between March 9, 1990 and May 16, 1990. Plaintiff's Memorandum Ex. A.

In March, 1990, plaintiff also forwarded to the union a letter that he had received from his sister stating that plaintiff had stayed with her in Ohio from December 3 through January 20 (presumably 1989 and 1990, respectively).

Ishman states that he came to the conclusion that these reasons were not satisfactory and that the grievance would not be successful. He states that it appeared to him that even though plaintiff had gone to DePaul on September 5, 1989, he did not remain there as an inpatient. Even assuming that plaintiff had been in Ohio from December 3 to January 20 (which Ishman disputes because he alleges that he called plaintiff between those dates at a local Rochester number), he did not see why plaintiff could not have contacted GMC sooner and told GMC why he could not report for work.

The grievance was denied at the first stage of the grievance procedure, and Ishman referred it to defendant Milford. After discussing the grievance with Ishman, Milford also concluded that the grievance lacked merit. Milford therefore withdrew the grievance on June 15, 1990. Milford Affidavit Ex. E, H.

Milford states that it was his "normal course of business" for him or someone from his office to notify grievants by telephone when their grievances were resolved, although he does not specifically remember whether he did so in plaintiff's case. Plaintiff claims that defendants never told him that the grievance had been withdrawn until March or April 1995.

The parties appear to agree, however, that there were contacts between plaintiff and defendants between 1990 and 1995. Milford states that plaintiff contacted him several times from 1990 through 1994, and expressed his dissatisfaction with the way that his grievance was handled. Plaintiff would complain that he had heard of another employee being reinstated after filing a grievance, and Milford would respond that plaintiff's situation was distinguishable and that there was nothing more that the union could do for him. Milford Affidavit ¶ 15.

Plaintiff states that he "communicated with the Defendants on numerous occasions for nearly six years and not once did the Defendants notify him that his grievance was resolved or withdrawn." Plaintiff's Memorandum at 3. Plaintiff does not say, however, what defendants did tell him during those "numerous" communications.

On August 29, 1994, an attorney, Lorenzo D. Williams, Esq., wrote a letter to defendant Dailey, stating that his then-client, Carlton Joseph, had informed him "that his grievance was never resolved properly ...:" Williams stated that he was sending the letter in "an attempt to resolve Mr. Joseph's grievances without legal action. However, if we do not hear from you within a reasonable time, we will commence whatever actions necessary [sic] to resolve this dispute." Handwritten at the bottom, Williams added: "P.S. The statute of limitations is six (6) years under the legal theory of breach of contract." Dailey Affidavit Ex. B. Dailey never responded. Dailey Affidavit ¶ 9.

On October 10, 1994, Williams wrote to Milford, stating that "nothing ha[d] been done to resolve [Joseph's] grievance" and

that he was "demanding due process according to the" CBA. Williams stated that if he did not get a response by October 28, 1994, he would "commence whatever legal actions necessary to resolve this dispute." Milford Affidavit Ex. I. Milford states that he told Williams on the telephone that nothing further could be done for Joseph, but Williams did not commence any proceedings on plaintiff's behalf. Plaintiff commenced the instant suit *pro se* on August 2, 1995.

## DISCUSSION

### I. Statute of Limitations

■ The statute of limitations for actions brought under 29 U.S.C. § 185 for breach of duty of fair representation is six months from the time that plaintiff knew, or should have reasonably known, that such a breach occurred. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 37 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993); *Legutko v. Local 816, International Bhd. of Teamsters,* 853 F.2d 1046, 1050 (2d Cir.1988). Summary judgment is appropriate when it is clear from the uncontroverted facts that plaintiff knew, or should have known, about the breach of the duty of fair representation more than six months before filing the complaint. *King v. New York Tel. Co.,* 873 F.2d 36, 38 (2d Cir.1989).

In the case at bar, I find that the record indisputably shows that plaintiff's claim accrued more than six months before August 2, 1995, and that defendants are therefore entitled to summary judgment.

■ Plaintiff makes much of his allegation that defendants never told him that his grievance had been "resolved" or "withdrawn." Even assuming that defendants never used those specific words in their communications with plaintiff, however, plaintiff should have known long before 1995 that the alleged breach had occurred. "A grieved employee cannot rely on a union's lack of response to informal correspondence to toll the statute of limitations ..." in a § 301 suit. *Cohen v. Flushing Hosp. and Med. Ctr.,* 68 F.3d 64, 68 (2d Cir.1995).[1]

*Cohen* involved an employee who had informally asked his union to file a grievance on his behalf. The union never did so. The Court of Appeals held that "[t]he inaction of the Union, while not commendable, does not permit the statute of limitations to be tolled." *Id.* The court also held that the employee's lack of diligence in trying to determine the union's stance on his termination defeated his argument that the limitations period was tolled by the union's alleged fraudulent concealment. *Id.* at 69.

■ The fact that the union in *Cohen* never filed a grievance at all, whereas in the instant case the union filed and then withdrew the grievance, does not require a different result here. Although the initial filing of a grievance might lead an employee to assume that it will be pursued, the employee cannot rest on that assumption forever. Certainly a period of over five years between the withdrawal of the grievance and the commencement of a lawsuit, during which time there was no apparent reason for plaintiff to think that the grievance was being pursued, is far too long a time for a plaintiff to avoid having constructive notice of the accrual of his claim.

There are no allegations or facts here to suggest that defendants in any way led plaintiff to believe that his grievance was being pursued or that it might be reactivated in some way. Plaintiff himself is noticeably silent concerning the details of his conversa-

---

1. Plaintiff contends that defendants have admitted that his grievance was not resolved until 1995. Plaintiff bases this assertion on a statement in defendants' response to plaintiff's request for production of documents that "plaintiff's grievance was properly resolved in June 1995." Plaintiff's Memorandum Ex. C.

Defendants assert that this is a typographical error, and that the statement should have read

"June 1990." Based on the entire record, that is the only logical conclusion. The evidence concerning the grievance shows that it was withdrawn in June 1990, and there is no evidence of any relevant events occurring in June 1995. Since the response to plaintiff's document request was itself written in 1995, this was undoubtedly a typographical error.

tions with defendants concerning his grievance.

■ In fact, the documentary evidence in this regard—the letters from his then-attorney Lorenzo Williams to Dailey and Milford in 1994—indicates that plaintiff was well aware that, in his attorney's own words, "nothing ha[d] been done to resolve his grievance ..." Defendants' failure to respond to the letter to Milford by Williams' stated deadline of October 28, 1994, more than nine months before this suit was commenced, must be considered absolutely the last date on which plaintiff should have known of his claim. *Cf. Demchik v. GMC*, 821 F.2d 102, 106 (2d Cir.1987) (triable issue of fact existed regarding whether fraudulent concealment tolled statute of limitations, since there was evidence that letter from union to plaintiff had deliberately misrepresented that plaintiff's grievance had been withdrawn on the merits, whereas in fact it was administratively closed due to union's failure to file appeal); *King v. New York Telephone Co.*, 785 F.2d 31, 35 (2nd Cir.1986) (summary judgment on limitations grounds inappropriate where there was evidence that union had led plaintiff to believe that arbitration of her grievance would be available after time to seek arbitration had expired).

The Seventh Circuit has held that a claim was time-barred under circumstances analogous to those in the case at bar. In *Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 327 (7th Cir.1992), the plaintiff's union had filed a grievance on his behalf. A local grievance committee found in his favor, but his employer ignored that finding and refused to reinstate him. His union did nothing further to pursue or enforce the grievance, despite the employee's letter asking them to do so and complaining about their inactivity. He received no response to the letter, and filed a § 301 claim sixteen months later.

Affirming summary judgment in the union's favor, the court held that the plaintiff's claim had accrued no later than the date on which the employee had written the letter complaining that the union had done nothing to reactivate his grievance or to attempt to enforce the grievance committee's finding.

Stating that "[p]rolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation," the court held that the plaintiff could not "claim that the union's failure to respond to his requests kept his claim from accruing; he did need formal notification to realize that the union would not help him and that he needed to bring suit himself." *Id.* at 327. The court concluded that "[t]he [plaintiff] cannot be allowed to sit back and claim lack of notice in circumstances such as these ..." *Id.* (quoting *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984)).

I reach the same conclusion here. There is no evidence that plaintiff believed, or had any reason to believe, that defendants were continuing to press forward with his grievance after it was withdrawn on June 15, 1990. Several years passed and plaintiff took no action. Such inactivity is not consistent with the acts of one who truly intends to press his claim. The evidence indicates that plaintiff was fully aware at least by October 1994 that defendants had not pursued his grievance. His threat at that time to sue also shows that he believed the union's inactivity to be in breach of the CBA. His commencement of suit over nine months after the October 10, 1994 letter was therefore untimely, and this action is barred by the statute of limitations applicable to his claim.

## II. Merits of Plaintiff's Claim

■ A union breaches its duty of fair representation only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Though a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory manner, the individual employee does not have an absolute right to have his grievance taken to the highest level regardless of the provisions of the applicable CBA. *Id.* at 190–91, 87 S.Ct. at 916–17. Even if a union member wishes to do so, then, a union does not violate its obligation by refusing to prosecute a grievance that it finds meritless, so long as its decision does not run afoul of

its duties as set forth in *Vaca*. *See Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 44 (2d Cir.) (union's good-faith nonarbitrary decision to decline to take action that is unlikely to be advantageous does not amount to breach of its duty of fair representation), *cert. denied*, 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989); *cf. Young v. United States Postal Serv.*, 907 F.2d 305, 309 (2d Cir.1990) (union's decision not to process "meritorious" grievances is breach of duty of fair representation).

I find on the undisputed facts of this case that plaintiff has not shown the existence of any genuine issues of material fact regarding the basis for the union's decision to withdraw his grievance. Defendants are therefore entitled to summary judgment on this ground as well.

In short, the record supports defendants' contentions that they did not see any basis for a satisfactory excuse for plaintiff's absence from work. Plaintiff's position is simply that it was arbitrary and discriminatory for defendants to withdraw his grievance knowing that plaintiff had drug and alcohol abuse problems and that he "had been on a binge" when he was ordered to return to work. Plaintiff's Memorandum at 2.

I am not persuaded by this argument. Plaintiff has not provided any evidence that his supervisors would have considered being "on a binge" a "satisfactory" reason for not showing up for work when ordered. Moreover, as GMC noted in its response to plaintiff's grievance dated February 14, 1990, "[t]he question of what constitutes a 'satisfactory reason' for his failure [to report for work] is not even at issue due to the fact that [Joseph] ha[d] failed to provide *any* reason for his absence nor ha[d] he had any contact or communication with Management from July 18, 1989 to" February 14, 1990. Milford Affidavit Ex. F.

As noted, under the CBA the employee had the duty upon receiving the notice to report either to report within five days or to provide a satisfactory reason for not reporting. Even assuming that plaintiff's sub-

stance abuse problems could have constituted a satisfactory reason for not reporting, he has not shown any reason why he could not at least have contacted the employer to explain his absence.

Furthermore, it is not this court's task to decide whether the grievance had merit, but to determine whether there are any issues of fact concerning whether defendants' decision was arbitrary, discriminatory, or taken in bad faith. I find none. "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery ... would be substantially undermined, thus destroying the employer's confidence in the union's authority." *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. The proof here shows that defendants did take time to review whatever materials plaintiff could provide them concerning his absence, and it further supports defendants' decision not to proceed further with the grievance. Defendants are entitled to summary judgment on this ground as well.

Since the complaint is being dismissed, it would be futile to join GMC as a party. Plaintiff's claims against GMC would not in any way correct the flaws in his claims. Plaintiff's motion to compel joinder of GMC is therefore denied.[2]

### CONCLUSION

Defendants' motion for summary judgment (Item 8) is granted, and the complaint is dismissed with prejudice.

Plaintiff's motion to compel joinder of an additional party (Item 17) is denied.

IT IS SO ORDERED.

---

**2.** My conclusions that plaintiff has failed to state a claim and that the action is time-barred make it unnecessary to address defendants' argument that the claim should be dismissed for failure to exhaust plaintiff's internal union remedies.