**Vera YOUNG, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE,
Defendant–Appellee.**

**No. 1302, Docket 90–6037.**

United States Court of Appeals,
Second Circuit.

Argued June 1, 1990.

Decided June 28, 1990.

Ellen Dichner, New York City (Gladstein, Reif & Meginniss, Walter M. Meginniss, Jr., of counsel), for plaintiff-appellant.

Bernard W. Bell, New York City, Asst. U.S. Atty., for the Southern District of New York (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Marla Alhadeff, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Vera Young appeals from a judgment entered in January 1990 in the United States District Court for the Southern District of New York, after a bench trial before Robert L. Carter, J., in favor of plaintiff's employer, defendant United States Postal Service (Postal Service). Plaintiff claimed that the Postal Service terminated her employment in violation of the "just cause" provision of the agreement between plaintiff's collective bargaining representative, the American Postal Workers Union (the Union), and the Postal Service. This appeal raises significant issues growing out of the hybrid nature of the complaint in this case, which alleges a breach of the duty of fair representation by the Union and a breach of the labor agree-

ment by the Postal Service. For reasons set forth below, we agree that judgment for the Postal Service was correct, although we disagree with the district court's conclusion that plaintiff had failed to establish the Union's breach of its duty of fair representation. For reasons set forth more fully below, we therefore affirm.

### Background

*Dispute Leading up to the Lawsuit*

This case has a complex factual and procedural background. The facts, as found by the district judge after a three-day trial at which 13 witnesses testified, were as follows. Plaintiff began her employment with the Postal Service in December 1969. She was dismissed 14 years later, in December 1983, at which time she had been working as a window clerk in the Post Office located in Nanuet, New York. For some time prior to plaintiff's discharge, Paul Avila, her immediate supervisor, had been dissatisfied with her job performance. In February 1983, the two had an argument over plaintiff's refusal to follow Avila's orders, and he issued a letter of warning countersigned by then-Postmaster John J. Mattison (subsequently succeeded by Aileen Wynne).

In mid-August 1983, plaintiff and Avila had two more confrontations over her refusal to follow orders; the second resulted in Avila's calling the police to make plaintiff leave the Post Office. Avila then suspended plaintiff for five days commencing August 29. Before the suspension became effective, however, plaintiff became hysterical on the job on Friday, August 26. She was then given sick leave for the remainder of the day and the next day and escorted out of the building by the police. (Plaintiff later claimed that she was then told not to come back to work until further notice, but the district court rejected the claim.)

Plaintiff subsequently advised the Postal Service by letter dated August 31 that she was going to the "Rest Home Clinic of Trincheras en Venezuela" for treatment of hypertension; she did not provide any address or indicate the intended length of her stay. Without receiving any oral or written authorization for taking leave, plaintiff left for Venezuela and remained there through early October.

In September 1983, Avila sent plaintiff three letters. The first advised her that, in accordance with the employee manual, she would have to present appropriate documentation from her attending physician before returning to work. The second requested a statement from her attending physician and the date of her expected return to work. It indicated that failure to comply with the requirements for obtaining sickness leave would result in a charge of A.W.O.L. These letters, which were sent to plaintiff's home address, were read to her over the telephone by a friend. The third letter, which followed a day after the second, provided notice of removal. The letter advised plaintiff that she was to be discharged effective October 31, 1983, for being A.W.O.L. since September 3, 1983, and for not providing the requisite supporting medical documentation. The letter also indicated that, in the decision-making process, account had been taken of plaintiff's prior disciplinary record.

When plaintiff returned to New York in mid-October, she provided the Postal Service with a note from her New York private physician, stating that she had "returned from her therapy in Venezuela and is physically fit" to return to work. Plaintiff also submitted a document in Spanish on Las Trincheras letterhead and stamped with the name of an auxiliary nurse, which indicated that plaintiff had been administered thermal treatment and her recovery was satisfactory.

The Postal Service subsequently rescinded the September notice of removal to allow physical and psychiatric examinations of plaintiff to determine whether a disability discharge was warranted. Plaintiff then refused to allow a psychiatric examination unless she could see the psychiatrist's report before it was transmitted to the Postal Service, a condition the psychiatrist refused to accept. In November the notice of removal was reinstated, effective December 5, 1983.

While plaintiff was still in Venezuela, the Union filed a timely Step I grievance under the collective bargaining agreement (the Agreement) to contest the September notice of removal. After Avila refused to rescind the notice of removal, the Union initiated a Step II grievance, which was an appeal to Postmaster Aileen Wynne. When the notice of removal was reinstated in November, the Union renewed its Step II grievance, which was denied. The Union subsequently failed to file a timely Step III grievance.

In July 1984, a local union representative advised the Union's national office that a Step III grievance had been filed but that the records had been lost in moving the local office, and in October 1984, the Union filed a Step III grievance, back-dated to October 1983. Thereafter, the Union asserted before the arbitrator that the Step III grievance had been filed in October 1983, but had been lost in the mails. This claim was rejected by the arbitrator, and he dismissed the grievance as untimely.

*Proceedings in the Court Below*

Plaintiff began this action in December 1986, basing jurisdiction on 29 U.S.C. § 185(a) and/or 39 U.S.C. § 1208(b). Plaintiff claimed that the Postal Service did not have just cause to discharge her and therefore violated the Agreement and that the Union had breached its duty to her of fair representation. Since plaintiff had already settled her claim against the Union, however, she named only the Postal Service as defendant. The case was tried in April 1989, after plaintiff had unsuccessfully petitioned this court for a writ of mandamus directing the district court to grant her a jury trial. *In re Young,* 869 F.2d 158 (2d Cir.1989) (per curiam). In an unreported opinion filed after trial, the judge held that plaintiff had failed to prove both that the Union had breached its duty of fair representation and that the discharge by the Postal Service was not for "just cause." This appeal followed.

Discussion

*Union's Duty of Fair Representation*

The threshold issue before us is whether the district court was correct in holding that the Union had not breached its duty of fair representation to plaintiff. If we affirm that ruling, that ends the appeal because the Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against her former employer for improper discharge. See *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). The Agreement between the Union and the Postal Service contained a grievance procedure culminating in arbitration. Under well-recognized doctrine, therefore, someone in plaintiff's position cannot simply sue her employer in a court of law for violating the collective bargaining agreement, but must first attempt to exhaust the remedies provided by that agreement. See *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Ordinarily, that would end the matter, since such a plaintiff would either win in the arbitration or if she lost, as she did here, would be bound by the result in that forum. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). However, under the doctrine of *Vaca v. Sipes,* 386 U.S. at 185, 190–91, 87 S.Ct. at 914, 916–17, and later cases, if plaintiff can show that the failure to arbitrate or the unsuccessful result in that forum was due to the Union's wrongful conduct, that is, a breach of its duty to represent plaintiff fairly, then the judicial forum will still be open.

That is what plaintiff attempted to show here. The district court found that the Union pressed plaintiff's discharge grievance through the first two steps of the grievance procedure, but failed to proceed to Step III (the last step prior to arbitration) within the time period required under the Agreement. The Union did ultimately submit the grievance to arbitration, but the arbitrator did not reach the merits; he ruled for the Postal Service because the Step III appeal had not been timely filed. In the ordinary case, this would extinguish plaintiff's right to challenge her discharge under the Agreement. But, plaintiff ar-

gues, she should not be barred from pressing her claim in a judicial forum because the Union did not represent her fairly.

■ A union breaches its duty of fair representation when its conduct toward an employee it represents is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916. A breach occurs when the union handles a "meritorious grievance ... in perfunctory fashion." Id. at 191, 87 S.Ct. at 917. This circuit has recognized that a union may breach its duty when it fails to process a meritorious grievance in a timely fashion with the consequence that arbitration on the merits is precluded. See *Schum v. South Buffalo Ry. Co.*, 496 F.2d 328, 330–32 (2d Cir.1974); *Ince v. National R.R. Passenger Corp.*, 693 F.Supp. 1466, 1479 (S.D.N.Y.1988); and *Reid v. Postal Union*, 109 L.R.R.M. (BNA) 3065, 3067 (S.D.N.Y.1982). Accordingly, plaintiff claims that the Union's failure to timely appeal the denial of her grievance at Step II constitutes a breach of the Union's duty of fair representation toward her.

■ The district court rejected this argument on the following reasoning:

Here there is no evidence in the record to indicate why the grievance was not pursued. Young has settled with the union, and presented no evidence on this issue. It is, however, plaintiff's burden to prove the union breached its duty, not the employer's to show that it did not. On the basis of this record Young did not meet her burden. Therefore, there is a failure of proof of the claim of the union's breach of the duty of fair representation.

Plaintiff argues to us that the district court erred in this holding, citing such cases as *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1273 (9th Cir.1983); *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 310 (6th Cir.1975) (*Ruzicka I*); and *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211 (6th Cir.1981) (*Ruzicka II*), for the proposition that a plaintiff satisfies her burden of showing a breach of union duty by introducing evidence of a missed filing deadline that is left unexplained.

The district court held that plaintiff had to show "why the grievance was not pursued" and, failing that, did not carry her acknowledged burden of persuasion. In the same vein, the Postal Service argues to us that the Union's failure to go to arbitration in timely fashion might have been a deliberate, reasoned action based upon its view of the merits of plaintiff's claim and therefore not a breach of duty to plaintiff at all. See *Vaca*, 386 U.S. at 194–95, 87 S.Ct. at 918–19. The principal defect with these arguments is that the Union did go to arbitration and claimed before the arbitrator that it did file in a timely manner. Although the arbitrator did not credit the latter assertion, plaintiff is entitled to rely on that claim as evidence that it was the Union's position that the grievance should have been pursued. Further, had the Union intended to abandon the grievance after Step II, it would have had no reason to pursue the case to arbitration where it subjected itself to the risk of having the grievance denied on the grounds that it was mishandled. And it most certainly would not have back-dated the grievance upon learning of the procedural deficiency. Thus, plaintiff showed that the Union thought her grievance was valid but was late in filing.

That ought to be enough to oblige the Postal Service to come forward with evidence, if it has any, to show that really the Union let the deadline go by because it thought the grievance had no merit. We need not go so far as accepting plaintiff's argument based upon *Dutrisac, Ruzicka I*, and *Ruzicka II* that she need bear only the burden of going forward with some evidence of the Union's breach. We leave that issue open. On this record, plaintiff proved the Union's breach, and the district court was thus required to consider her claim on the merits.

It is true that the Union was not a party to the proceedings in the district court; indeed, the language in the judge's opinion quoted above indicates that this fact might have influenced his decision. However, the Union's absence from the case should not add to the plaintiff's burden, and the Postal Service is in no better position than the

Union would have been. In the absence of the Union, on this record the Postal Service had to produce evidence that the Union's tardy filing was based upon a justifiable reason. There is no reason to believe that it was.

### Just Cause for the Discharge

■ At this point, however, plaintiff has succeeded in only half of her case on appeal. It is not enough to persuade us that, because of the Union's breach, the district court had to rule on the merits of her discharge claim. The district judge did so rule, and squarely held that "the Postal Service had just cause for terminating Young." Plaintiff must also persuade us that the district court erred in this ruling.

It is not entirely clear, however, what plaintiff's burden is on that issue. Ordinarily, an appellant in a nonjury civil case has at least a considerable burden in attacking findings of fact, since we must satisfy ourselves that such findings are clearly erroneous before we may overturn them. See Fed.R.Civ.P. 52(a). In such a case, however, an appellant's burden on issues of law is merely to persuade us that the district judge was wrong, not that the judge was clearly wrong. Further, we would usually regard a determination whether just cause existed for discharge as a question of law or a mixed question of law and fact to be treated on review as a question of law. But the question of the proper standard of review here is more complicated, since it is arguable Judge Carter was, in effect, performing the function of an arbitrator under the Agreement in deciding whether the Postal Service fired plaintiff for just cause. On this theory, it is further arguable that we should therefore give the judge's interpretation and application of the Agreement the extreme deference an arbitrator's ruling would have. See *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As will be seen below, however, we need not accept that view or even give any weight to the policies that suggest finality for arbitral interpretations of ongoing collective bargaining agreements. For even if we apply the usual, and less deferential, standard of review, we conclude that we should affirm here.

The district judge found as a fact that plaintiff's claim that she was told on August 26, 1983 not to come back to work until further notice was not credible. Such a finding was certainly not clearly erroneous and was obviously based upon the judge's evaluation of the evidence before him, including plaintiff's testimony. True, plaintiff argues to us that she believed that she was so told and that the judge did not find to the contrary. The latter point seems dubious at best, since the judge's finding directly rejected her testimony. In any event, if the finding stands—as it must—such a belief by plaintiff would have had no reasonable basis. Once the finding was made, the record, which included prior acts of defiance, fully supports the judge's conclusion that the discharge was for cause.

Plaintiff argues that the district judge committed various errors of law, including the basic one of applying an incorrect standard in determining whether there was just cause for discharge. According to plaintiff, the judge used the inappropriate statutory "efficiency of the service" standard of review applicable to appeals of disciplinary actions brought to the Merit Systems Protection Board. See 5 U.S.C. § 7513. Although the judge did refer to the "efficiency of the service" standard and cited decisions applying section 7513, he ended up by concluding more broadly that "[u]nauthorized absences without leave are unquestionably a just cause for termination." That does not sound to us like undue deference to the Postal Service. Nor can we say that it is an unsound conclusion as a matter of law. It is simple common sense that a postal employee cannot defiantly take off for an extended period of time without clearing her action with her supervisor and that such action may result in discharge regardless of the years she has been employed. This is particularly so in plaintiff's case, since she had been a shop steward whose duties included representing employees in disputes concerning leaves of absence.

Plaintiff contends that an arbitrator, familiar with the many labor arbitration decisions, the principles that animate them and the proper construction of labor contracts, would not have found just cause for discharge of a 14–year employee. This argument was buttressed by the testimony at trial of Professor Clyde Summers, an acknowledged scholar and expert in the field. An experienced labor arbitrator might carry out this prediction, but then again might not. In any event, that is not the issue before us. Our job is to decide whether the judge could properly hold, on the record before him, that the Postal Service had just cause for discharge. We have no doubt that he (or for that matter, a labor arbitrator) could so decide.

Accordingly, we affirm the judgment of the district court. We compliment both counsel for excellent oral arguments.