Mary Elizabeth FLEMING

v.

THE STOP & SHOP SUPERMARKET CO. a/k/a the Stop & Shop Cos., Inc.; United Food and Commercial Workers Union, Local 919.

Marcia Bimler

v.

The Stop & Shop Supermarket Co. a/k/a the Stop & Shop Cos., Inc.; United Food and Commercial Workers Union, Local 919.

Nos. 3:96CV594(AHN), 3:96CV770.

United States District Court, D. Connecticut.

Feb. 11, 1999.

Kerin M. Woods, Anderson & Ferdon, P.C., Norwich, CT, Lori M. Comforti, Anderson & Ferdon, Norwich, CT, for Mary Elizabeth Fleming.

Lori M. Comforti, Anderson & Ferdon, Norwich, CT, for Marcia A. Bimler.

Matthew W. Den Ouden, O'Connell, Flaherty & Attmore, Hartford, CT, Ann M. O'Neill, Michael F.X. Dolan, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for Stop & Shop Supermarket Co.

J. William Gagne, Jr., Jason W. Cohen, J. William Gagne & Assoc., Wethersfield, CT,
for United Food & Commercial Workers Union, Local 919.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiffs in these consolidated cases, Mary Elizabeth Fleming ("Fleming") and Marcia Bimler ("Bimler"), bring their respective actions against the defendants, The Stop & Shop Supermarket Co. a/k/a the Stop & Shop Companies, Inc. ("Stop & Shop"), and United Food and Commercial Workers Union, Local 919 (the "Union"). They allege negligent infliction of emotional distress and invasion of privacy: false light against Stop & Shop, and breach of the duty of fair representation against the Union. These actions were originally brought in the Connecticut Superior Court by a seven-count complaint dated March 29, 1996 and were removed to this Court on May 2, 1996.

Now pending before the Court are Local 919, UFCW's Motion for Summary Judgment and Defendant The Stop & Shop Supermarket Company a/k/a The Stop & Shop Companies, Inc.'s Motion for Summary Judgment on Counts I and II of Plaintiffs' Amended Complaints. For the following reasons the Union's motion for summary judgment [doc. # 74] is GRANTED. However, the Court declines to exercise supplemental jurisdiction over Fleming's and Bimler's remaining state law claims and thus remands those actions to state court. As a consequence, Stop & Shop's motion for summary judgment [doc. # 77] is DENIED WITHOUT PREJUDICE TO RENEWAL upon remand to state court.

### STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A

court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c); *see Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (citation and internal quotation marks omitted). The burden of showing that no genuine dispute about an issue of material fact exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, a court is required to resolve all ambiguities and draw all inferences in favor of the nonmovant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citation omitted).

## UNDISPUTED FACTS

The following facts are undisputed.

Fleming and Bimler were employees of Stop & Shop who worked at the customer service desk at the Stop & Shop in Norwich, Connecticut. As employees of Stop & Shop, they were covered by a collective bargaining agreement between the Union and Stop & Shop. They were both suspended by Stop & Shop in 1994 following allegations of improper and unlawful activities at the customer service desk. These allegations were reported to criminal investigators who arrested and brought charges against both Fleming and Bimler. After a jury trial on the criminal charges in September 1995, Fleming and Bimler were found not guilty.

Fleming and Bimler informed the Union of their acquittals and requested, pursuant to the collective bargaining agreement, that the Union pursue their grievances in relation to their suspensions from Stop & Shop. (*See* Rule 9(c) Statement ¶ 1 [hereinafter, "Defs.' Stat."]; Local Rule 9(c) Statement Material, Undisputed Facts Supp. Pls.' Objection to Def. Union Food and Commercial Workers Union, Local 919 Mot. Summ. J. Counts I & II[sic] Pls.' Am. Compls. ¶ 1 [hereinafter, "Pls.' Stat."].) The Union scheduled a "Third Step" grievance meeting with Stop & Shop management for October 20, 1995. (*See* Defs.' Stat. ¶ 1; Pls.' Stat. ¶ 2; *see also* Defs.' Stat. Ex. 4 (reproducing grievance procedures of the collective bargaining agreement between the Union and Stop & Shop).) Prior to the meeting, Fleming and Bimler had contact with a Union business agent, James Phaiah ("Phaiah"), but did not meet with their actual Union representative, Mark Espinosa ("Espinosa"), until the day of the meeting. (*See* Defs.' Stat. ¶ 2; Pls.' Stat. ¶¶ 3, 5.) Espinosa reviewed Phaiah's notes concerning the case, but he did not actually speak with Fleming and Bimler prior to the meeting. (*See* Defs.' Stat. ¶ 5; Pls.' Stat. ¶¶ 5–7.) Espinosa did not believe that he needed to meet with them before the Third Step grievance procedure meeting. (*See* Defs.' Stat. ¶ 13; Pls.' Stat. ¶ 13.)

Fleming, Bimler, Phaiah and Espinosa were all present at the Stop & Shop store where the meeting was scheduled to occur on October 20, 1995. (*See* Defs.' Stat. ¶ 3; Pls.' Stat. ¶ 4.) On that day, prior to the Third Step meeting, Espinosa met with store management to ascertain its position and review some documents provided by Stop & Shop. (*See* Defs.' Stat. ¶¶ 6–7; Pls.' Stat. ¶¶ 10–12.) Espinosa then left store management, went outside, and informed Fleming and Bimler that Stop & Shop did not intend to reinstate them. (*See* Defs.' Stat. ¶ 8.) Espinosa requested that Fleming and Bimler attend the meeting with store management in order to further determine Stop & Shop's position and to provide them with a chance to tell their

side of the story. (*See* Defs.' Stat. ¶ 9; Pls.' Stat. 17.)

Fleming and Bimler refused to attend the Third Step grievance procedure meeting because they did not feel comfortable with Espinosa as their representative. (*See* Pls.' Stat. ¶ 18.) Due to Fleming and Bimler's refusal to attend the meeting, Stop & Shop stood by its decision not to reinstate them. (*See* Defs.' Stat. ¶ 15.) Espinosa informed Fleming and Bimler that arbitration was the next step in the grievance procedure and that the Union would pursue their grievances in arbitration. (*See* Defs.' Stat. ¶ 17; Pls.' Stat. ¶ 19.) However, Fleming and Bimler subsequently told Espinosa they did not want him to proceed to arbitration on their behalf. (*See* Defs.' Stat. ¶ 19; Pls.' Stat. ¶ 20.) They maintain that they made this decision because they did not have confidence in the ability of Espinosa and the Union to represent them. (*See* Pls.' Stat. ¶ 20.) Fleming and Bimler then hired a non-Union attorney and brought the current actions.

### DISCUSSION

I.  The Union's Motion for Summary Judgment

The Union argues that summary judgment must be granted in its favor because Fleming and Bimler failed to exhaust their grievance procedure remedies under the collective bargaining agreement before bringing their suits. In the alternative, the Union claims that Fleming and Bimler cannot, as a matter of law, show that the Union breached its duty of fair representation. The Court agrees that summary judgment must enter in the Union's favor because Fleming and Bimler failed to exhaust the available remedies under the collective bargaining agreement.

■ "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (footnote omitted). If the union refuses to process or only perfunctorily processes the claim, an employee may be able to seek redress. *See id.* However, unless the collective bargaining agreement provides otherwise, "there can be no doubt that the employee must afford the union the opportunity to act on his behalf." *Id.* at 653, 85 S.Ct. 614.

■ Subsequent to *Republic Steel,* the Supreme Court refined its guidelines for when an employee can resort to the court system even though the employee failed to exhaust all available remedies under a collective bargaining agreement. *See Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). First, an employee is not limited to the remedial procedures of a collective bargaining agreement when the conduct of the employer amounts to a repudiation of the contractual provisions. *See id.* at 185, 87 S.Ct. 903. Second, an employee may seek judicial enforcement of contractual rights when "the union has sole power under the contract to invoke the higher stages of a grievance procedure, and ... the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Id.* In other words, an employee's failure to exhaust contractual remedies can be excused if the employee shows that the union "breached its duty of fair representation in its handling of the employee's grievance." *Id.* (footnote omitted).

■ A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. 903 (citations omitted); *see also Young v. United States Postal Serv.,* 907 F.2d 305, 308 (2d Cir.1990) (same). Under Second Circuit precedent, in order to establish a breach of the duty of fair representation, a plaintiff must show either that a conspiracy existed between the union and the employer, or that the union's "tactical decisions ... amounted to conduct and omissions so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *Barr v. United Parcel Serv., Inc.,* 868 F.2d 36, 43 (2d Cir.1989) (internal quotation marks omitted). More-

over, "even negligence on the union's part does not give rise to a breach." *Id.*

■ Here, the undisputed facts cannot reasonably be interpreted to support the view that Fleming and Bimler failed to exhaust their remedies under the collective bargaining agreement because of arbitrary, discriminatory or bad faith conduct on the part of the Union. Indeed, Fleming and Bimler concede that the Union offered to participate in the Step Three meeting and to pursue their grievances through arbitration. (*See* Pls.' Stat. ¶¶ 18–20.) However, Fleming and Bimler refused to participate in the Step Three meeting and told the Union not to pursue arbitration. (*See id.*) Thus, the failure of Fleming and Bimler to exhaust their remedies results from their own conduct. Under these circumstances, the Court finds, as a matter of law, that Fleming and Bimler cannot avoid a finding that their claims are barred due to their failure to exhaust the remedies available under the collective bargaining agreement. They cannot show that the Union breached its duty of fair representation and, thereby, prevented them from exhausting their contractual remedies. *See, e.g., Culp v. Philadelphia Newspaper and Magazine Employees Union,* No. 92–0054, 1992 WL 382352, at *3 (E.D.Pa. Dec.10, 1992) (finding, as a matter of law, plaintiff cannot sustain cause of action against union for breach of duty of fair representation when plaintiff, and not union, refused to go forward with arbitration and union stated it would proceed to arbitration on behalf of plaintiff); *Collins v. Radio City Music Hall Productions, Inc.,* No. 88 Civ. 1818(JFK), 1989 WL 122793, at *3 (S.D.N.Y. Oct.11, 1989) (dismissing breach of contract claim for failure to exhaust remedies under applicable arbitration procedures where plaintiffs approached union representatives once about arbitrating their dispute, were told arbitration was not possible, and never asked the representatives to reconsider their position); *Schutzer v. Little Red Sch. House, Inc.,* No. 83 Civ. 8950(GLG), 1984 WL 856, at *2 (S.D.N.Y. Sept.12, 1984) (dismissing for failure to exhaust collective bargaining agreement remedies Labor–Management Relations Act § 301 claim where plaintiff never attempted to resolve her grievance via the procedures of the collective bargaining agreement).

The Court is not persuaded by Fleming's and Bimler's argument that the Union breached its duty of fair representation by not meeting with them before the Third Step grievance procedure meeting and by not adequately preparing to represent them. First, their argument confuses the requirements for avoiding the finality of an arbitration decision with those for excusing the failure to exhaust remedies under a collective bargaining agreement. Thus, their reliance on *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), is misplaced. *Hines* concerns situations where a union's breach of its duty of fair representation allows a plaintiff to overcome a provision of a collective bargaining agreement that makes arbitration decisions final. *See id.* at 571, 96 S.Ct. 1048. As the Supreme Court explained in *Hines:*

> It is true that *Vaca* dealt with a refusal by the union to process a grievance. It is also true that where the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings.

*Id.* at 568–69, 96 S.Ct. 1048. Here, the question is whether the Union breached its duty of fair representation in a manner that resulted in Fleming's and Bimler's failure to exhaust their remedies under the collective bargaining agreement. Given the refusal of Fleming and Bimler to avail themselves of the collective bargaining procedures, the Union cannot be found to have wrongly refused to process their grievances.

Second, even if the Court was required to examine the conduct of the Union in this case, under Second Circuit precedent, the Union's conduct would not amount to a breach of the duty of fair representation. In *Barr,* the Second Circuit addressed a similar

claim that a union's lack of preparation constitutes a breach of the duty of fair representation.[1] *See* 868 F.2d at 44. The complaint in *Barr* alleged, *inter alia*, that the union breached its duty of fair representation by failing to prepare properly for a "Step 1" meeting, failing to meet with the plaintiff before and being ill-prepared for a "Step 2" meeting, and failing to adequately prepare for the final arbitration hearing. *See id.* at 40–41. The court found that these "tactical errors" were not so egregious as to constitute evidence of bad faith and a failure to fairly represent Barr. *See id.* at 43 (vacating jury verdict in favor of the plaintiff and dismissing the complaint).

In sum, the Court holds, as a matter of law, that Fleming and Bimler cannot establish that the Union breached its duty of fair representation in a manner that excuses Fleming's and Bimler's failure to exhaust the remedies available under the collective bargaining agreement. Therefore, summary judgment in favor of the Union is appropriate.

## II. Stop & Shop's Motion for Summary Judgment

The Union removed these actions to this Court on the basis of federal question jurisdiction, specifically, 29 U.S.C. § 167. However, given the Court's determination that Fleming's and Bimler's claims against the Union cannot be maintained, that basis for this Court's jurisdiction no longer exists. As a result, the Court declines to exercise supplemental jurisdiction over Fleming's and Bimler's remaining state-law claims for negligent infliction of emotional distress and invasion of privacy: false light against Stop & Shop, both of which raise factual and legal issues distinct from the claims against the Union. *See* 28 U.S.C. § 1367(c). Accordingly, the Court denies Stop & Shop's motion for summary judgment without prejudice to renewal upon remand to Connecticut state court.

*CONCLUSION*

For the reasons stated above, the Union's motion for summary judgment [doc. # 74] is GRANTED. The Court declines to exercise jurisdiction over Fleming's and Bimler's remaining state-law claims and directs the Clerk to REMAND this action to state court. Stop & Shop's motion for summary judgment [doc. # 77] is DENIED WITHOUT PREJUDICE TO RENEWAL upon remand to state court. The Clerk is ordered to CLOSE this case.

---

1. While the plaintiff in *Barr* sought to attack the finality of an arbitration decision, the court's discussion of a union's duty of fair representation is nevertheless instructive in this case.