Wilma F. CLARKE; Marie Brown; Ruby B. Huggins; and Geraldine Parks, Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA; AT & T Corporation; Lucent Technologies, Inc.; Avaya, Inc.; AFL–CIO; and CLC, Defendants.

No. 03–CV–5912 (JBW).

United States District Court, E.D. New York.

May 20, 2004.

50

Jonathan Silver, Kew Gardens, NY, for Plaintiffs.

Gregory W. Knopp, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY, Melissa L. Dulski, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Joel M. Cohn, Washngton, DC, Lowell Peterson, Meyer, Suozzi, English & Klein, P.C., New York, NY, for Defendants.

MEMORANDUM, JUDGMENT
& ORDER

WEINSTEIN, Senior District Judge.

## Table of Contents

I. Introduction .................................................................51

II. Parties and Relief Sought ...............................................51

III. Facts .......................................................................52

IV. Law .........................................................................53
 A. Summary Judgment Standard ......................................53
 B. Statute of Limitations ..............................................53
 C. Duty to Exhaust Intra–Union Remedies ..........................54
 D. Duty to Exhaust Contractual Remedies ..........................55
 E. Duty of Fair Representation........................................56

V. Application of Law to Facts ..............................................57
 A. Statute of Limitations ..............................................57
 B. Laches ...............................................................57
 C. Duty to Exhaust Intra–Union Remedies ..........................58
 D. Duty to Exhaust Contractual Remedies ..........................58
 E. Duty of Fair Representation........................................58

VI. Conclusion .................................................................60

## I. Introduction

This lawsuit is the culmination of plaintiffs' more than a decade-long pursuit of compensation for their discharge by their employer, and for their union's failure to properly protect them under contract seniority rules. Laches by all the parties, foot-dragging attributable to ineffective and dilatory arbitration, and delays in the courts, explain, but do not justify, this long drawn-out process.

## II. Parties and Relief Sought

Plaintiffs are former employees of the American Telephone and Telegraph Corporation ("AT & T") and were members of the Communications Workers of America (the "CWA" or "Union"). The CWA was the exclusive bargaining agent for AT & T employees at the time of plaintiffs' employment.

This is a hybrid section 301–fair representation suit against the Union and AT & T (as represented by three successor companies, AT & T, Lucent Technologies and Avaya Inc., collectively referred to as "AT & T"). The claim is that the Union breached its duty of fair representation by failing to file a grievance with AT & T based upon a recall of laid-off employees that took place in 1992 (the "1992 Recall"). AT & T is sued under section 301 of the Labor Management Relations Act for allegedly breaching the collective bargaining agreement (the "CBA") when plaintiffs were not rehired as part of the 1992 Recall.

Plaintiffs seek a declaratory judgment that defendant CWA breached its duty of fair representation and that defendant AT & T breached the collective bargaining agreement. Defendant CWA asks for a declaratory judgment that: the Union did not breach its duty of fair representation; plaintiffs' claims are barred because they failed to pursue and exhaust internal union

remedies; plaintiffs' claims are barred because they failed to exhaust their contractual remedies; and plaintiffs' claims are time-barred. Defendant AT & T demands a declaratory judgment that the Union did not breach its duty of fair representation, and therefore all claims against the employer must fail; AT & T also argues that plaintiffs' claims are barred by the statute of limitations.

"To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (citations omitted).

All parties have filed motions for summary judgment. They are denied for the reasons stated below.

### III. Facts

Plaintiffs were employees of an AT & T business unit called Market Delivery Centers ("MDC") until 1991. In early 1991 AT & T eliminated MDC as part of a reorganization of its Business Sales Division. The MDC functions were divided and transferred to already existing business units, Business Communications Systems ("BC Systems") and Business Communications Services ("BC Services"). Former employees of the Business Sales Division, including plaintiffs, were transferred to either BC Systems or BC Services depending on their job functions. The Business Sales Division was eliminated.

Shortly after the reorganization of the Business Sales Division, AT & T decided—for economic reasons—to discharge employees in the BC Services and BC Systems divisions. Plaintiffs were laid off along with other employees during a first round of staff reductions in February 1991. Approximately three weeks later, a second round of layoffs occurred. In August 1992, AT & T rehired some employees (the "1991 Layoffs"). The 1991 Layoffs were governed by a CBA dated May 28, 1989. When the 1992 Recall occurred, the parties had executed a new CBA dated May 29, 1992. The two CBAs contained identical language.

The crux of the problem with the 1991 Layoffs was that for purposes of determining seniority of the former employees of the defunct MDC, AT & T allocated them between two, separate seniority lists based on their new divisions. Previously, they had all been on one, unified seniority list. The separation into two lists occurred even though there had been no change in job duties or titles. Under the CBA, layoffs were to be made in inverse order of seniority. By creating two lists, the order of layoff was altered. And, in plaintiffs' case, the alteration was for the worse.

The Union filed a grievance on behalf of many employees, including plaintiffs, alleging that AT & T violated the CBA in the way it conducted 1991 Layoffs. Pursuant to their agreement, the Union and AT & T then entered into an arbitration. The arbitrator found that AT & T had violated the CBA and ordered that the "Grievants ... be made whole...." Peterson Aff. at Ex. 2 ("1994 Decision").

The Union claims that in the course of discussing the appropriate "make whole" relief, it first discovered that some employees had been recalled in 1992. It contends that it was unaware of the 1992 Recall as it was occurring. Plaintiffs claim that they informed their union representatives of the 1992 Recall shortly after it occurred. Clarke Aff. at ¶ 3; Brown Aff. at ¶ 3.

The Union demanded that AT & T pay plaintiffs as if they had been recalled in 1992 as part of a "make whole" relief. After an unexplained three year delay the Union filed suit in federal district court in

Washington, DC in 1997 to enforce the 1994 Decision. The district court ordered the parties to return to the arbitrator to determine how the 1992 Recall affected the "make whole" relief granted in the 1994 Decision on the 1991 Layoffs. Peterson Aff. at Ex. 4.

After failed attempts to communicate with the arbitrator, the parties were informed in 1999 that he was too ill to further arbitrate their dispute. The Union and AT & T selected a new arbitrator. For no known reason, this second arbitrator failed to issue a decision. As late as 2002, the parties were seeking action from the second arbitrator. He did not respond.

In September 2002, three of the four plaintiffs filed suit in this district alleging that the Union violated its duty of fair representation by failing unilaterally to terminate the second arbitrator. They then voluntarily withdrew that complaint because AT & T and the Union agreed to employ the services of yet a third arbitrator.

The third arbitrator issued an opinion on October 16, 2003. Peterson Aff. at Ex. 1 ("2003 Decision"). He found that the employees were entitled to back pay from the date they were laid off in 1991 (the first round) until the second 1991 layoff (the second round). He declined to determine if the make whole relief included back pay from the date of the 1992 Recall, because the Union had failed to grieve it.

Plaintiffs' case is essentially based on the Union's alleged failure to grieve the 1992 Recall. They claim that they verbally promptly informed their union representatives of their dissatisfaction with the 1992 Recall. The Union disputes this and states that it was unaware of the 1992 Recall at the time it occurred. The third arbitrator's decision contains a footnote that the Union was "unaware of the recall." 2003 Decision at 15 n. 18.

## IV. Law

### A. Summary Judgment Standard

Summary judgment may be granted only where it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Inferences will be drawn in a light favorable to the party opposing the motion. *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex*, 477 U.S. 317 at 323, 106 S.Ct. 2548. Once the moving party has met this burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Statute of Limitations

■ The statute of limitations for a hybrid section 301–fair representation claim is six months. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 166, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989). A central legal question is at what point the statute of limitations began to run.

■ The general rule is that a claim accrues on the date the employee "knew or reasonably should have known that [a breach of the duty of fair representation] had occurred." *Kavowras v. The New York Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003) (quoting *Santos v. Dist. Council of New York City*, 619 F.2d 963, 969 (2d

Cir.1980)). In *Kavowras*, for example, the court held that the plaintiff's claim was barred when his suit was filed almost two years after he had "actual knowledge of the breach." *Kavowras*, 328 F.3d at 55. Defendants cite *Cohen v. Flushing Hospital and Medical Center* for the same proposition, that plaintiffs' claims accrued when they had actual knowledge of the Union's alleged breach. 68 F.3d 64 (2d Cir.1995). In *Cohen*, the breach was the Union's failure to represent that plaintiff at all. *See also Guillaume v. Int'l Serv. Sys., Inc.*, 2000 WL 45447 (S.D.N.Y. Jan.19, 2000).

*Ghartey v. St. John's Queens Hospital* is instructive. 869 F.2d 160 (2d Cir.1989). The *Ghartey* case—as here—involved "a situation in which a union represented an employee throughout an arbitration hearing, through to its termination by the arbitrator's issuance of an award." *Id.* at 163. The court thought it unwise to require an employee to bring suit against her union based on poor representation before she could discover the result of the union's efforts. Adherence to the general rule as stated in *Kavowras* would require an employee to sue the union while the union was still representing her. The court recognized the possibility that the union and employee could prevail in arbitration despite poor representation, thereby obviating any basis for a lawsuit. "In such a case, intervention by the district court would be unnecessary, superfluous and wasteful." *Id.*

▮ Where a plaintiff's complaint is based on inadequate union representation during arbitration, the limitations period begins running on the date of the final arbitration order and award. *See Id.; Guillaume*, 2000 WL 45447 at *5; *Lettis v. United States Postal Svc.*, 39 F.Supp.2d 181, 192 (E.D.N.Y.1998); *see also Ramey v. Dist. 141, Int'l Assoc. of Machinists & Aerospace Workers*, 2002 WL 32152292, *7 (E.D.N.Y. Nov.4, 2002) (noting that there

is genuine issue of material fact as to whether union decision was "final," thereby providing a basis for suit). This conclusion is not inconsistent with the general rule that claims accrue upon the plaintiff's knowledge of a breach. It is only after an unfavorable arbitration decision that a plaintiff "knows" that the union's conduct has breached the standards of fair representation.

## C. Duty to Exhaust Intra–Union Remedies

▮ The district court has discretion to require exhaustion of the intra-union procedures. Three factors influence the court's decision:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton v. Intern. United Auto. Workers*, 451 U.S. 679, 688, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Decisive in the instant case is the second factor and the basis of the Court's central holding in *Clayton*: "[W]here an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union." *Id.* at 685, 101 S.Ct. 2088.

In *Clayton*, the plaintiff was dismissed for violating a behavioral rule. He filed a grievance, and the union sought arbitration before ultimately deciding to withdraw its request for arbitration. Instead of appealing the union's decision not to request arbitration, the plaintiff filed suit under section 301, claiming that the union had breached its duty of fair representation. He sought reinstatement from his employer and monetary damages from the union and employer. The union argued that the suit should be dismissed because the employee had failed to exhaust internal union procedures. Because the union could "neither reinstate [the plaintiff] in his job ... nor reactivate his grievance," it was not necessary that he exhaust internal union procedures. *Id.* at 691–92, 101 S.Ct. 2088; *see also Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 186–87 (2d Cir.1998) (finding that where union procedures provided for reactivation of grievance, employee must exhaust procedures); *Skolnik v. Am. Guild of Musical Artists & New York City Opera, Inc.*, 2001 WL 849447, 2001 U.S. Dist. LEXIS 10621 (S.D.N.Y.2001) (exhaustion required when internal union procedures permit reactivation of grievance against employer); *Williams v. United Auto. Workers*, 841 F.Supp. 499, 504 (W.D.N.Y.1993) (finding that union could not reactivate grievance and therefore exhaustion was not required).

■■■ The union bears the burden of proving that its internal appeals procedures are reasonable and adequate. It must prove that the procedures satisfy the three factors enumerated in *Clayton*. *See Maddalone*, 152 F.3d at 186. To be deemed reasonable and adequate, the procedures must be capable of providing full relief. *See, e.g., Id.* at 187; *Skolnik*, 2001 WL 849447, *3, 2001 U.S. Dist. LEXIS at *10; *Monaco v. Smith*, 2004 WL 203009, 2004 U.S. Dist. LEXIS 1334 (S.D.N.Y. 2004) (internal remedies did not provide for punitive damages, which were sought by plaintiff).

## D. Duty to Exhaust Contractual Remedies

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (emphasis in original); *see also Abrams v. Carrier Corp.*, 434 F.2d 1234, 1246 (2d Cir.1970) ("The requirement that an aggrieved employee resort to the grievance procedure is not a mere ritual or formality."). Plaintiffs contend that the rule requiring workers to rely first on grievance rules does not apply where the union has breached its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also Petersen v. Rath Packing Co.*, 461 F.2d 312 (8th Cir.1972) ("[W]hen a good faith attempt to present a grievance is made and the Union decides not to further represent the individuals, the law relieves a party of his responsibility to further exhaust contractual remedies.").

■■■ The language of the CBA determines whether actions to initiate the grievance process qualify as "attempted" uses of the grievance procedure. In *Schum v. South Buffalo Ry. Co.*, the plaintiff wrote a letter to the union office and subsequently was assured that the union would take up his grievance. 496 F.2d 328 (2d Cir.1974). The union failed to follow through with the grievance and, after being sued, claimed on summary judgment that the plaintiff had not exhausted the administrative processes. The court found that there was an "attempt" to use the official procedures, and that the plaintiff's suit was not barred

for lack of exhaustion. *Id.* at 331–32. Likewise, in *Scott v. Anchor Motor Freight, Inc.*, a "timely sent" and "properly addressed" letter was a "sufficient attempt to invoke the collective bargaining agreement's grievance procedure." 496 F.2d 276, 279 (6th Cir.1974).

### E. Duty of Fair Representation

■■■ An inquiry into the union's behavior begins with the "language contained in the collective bargaining agreement." *Spellacy v. Airline Pilots Assoc.-Int'l,* 156 F.3d 120, 127 (2d Cir.1998).

The Court of Appeals for the Second Circuit "has recognized that a union may breach its duty when it fails to process a *meritorious* grievance in a timely fashion with the consequence that arbitration on the merits is precluded." *Young v. United States Postal Svc.,* 907 F.2d 305, 308 (2d Cir.1990) (emphasis added); *Schum v. South Buffalo Ry. Co.,* 496 F.2d 328, 330–32 (2d Cir.1974).

"To establish a breach of duty of fair representation '[t]he union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermine[d] the arbitral process.'" *Mack v. Otis Elevator Co.,* 326 F.3d 116, 129 (2d Cir.2003) (citation omitted); *see also Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). When an employee claims that the union's decision not to file a grievance is a breach of the duty of fair representation, courts typically seek to determine whether the union's conduct can be characterized as arbitrary. *See e.g., Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148 (2d Cir.1994) (finding that failure to pursue grievance claim was arbitrary); *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1274 (9th Cir.1983) (holding that union's failure to process grievance might have been arbitrary); *Caputo v. Nat'l Assoc. of Letter Carriers,* 730 F.Supp. 1221 (E.D.N.Y.1990) ("At issue in this case is whether the union's failure to file the grievance ... is properly characterized as arbitrary."). *But cf. Banks v. Bethlehem Steel Corp.,* 870 F.2d 1438, 1444 (9th Cir.1989) ("While unions are accorded great leeway in deciding how to handle employee grievances, the merits of the underlying dispute or claim are not irrelevant to evaluating bad faith.").

The Second Circuit stated in *Cruz:*

> Included in the union's duty of fair representation 'is the fair and prompt consideration and, if dictated by controlling legal standards, processing on behalf of employees of their claims under contract dispute resolution procedures, ..., although the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance.

34 F.3d at 1153–54 (citations omitted). In *Cruz,* the plaintiffs verbally complained to their union representatives regarding an employer's actions. The union did not investigate the validity of their complaints nor did it file a grievance on their behalf. The court found that the CBA did not require that the employees file complaints with the union in writing; it upheld the jury's finding that the union's failure to act was arbitrary. In contrast, in *Mack v. Otis Elevator Co.,* the plaintiff did not request that the union file a grievance and did not file a written charge against a union member as required by the union's grievance procedures. 326 F.3d 116 (2d Cir.2003). The CBA required a "written charge." The court held that the union had not breached its duty to represent the plaintiff, having not filed a grievance "because [the plaintiff] never requested that it do so." *Id.* at 129.

"[A]rbitary conduct amounting to a breach is not limited to intentional conduct by union officials but may include acts of omission which, while not calculated to harm union members, 'may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.'" *Cruz,* 34 F.3d at 1153 (citations omitted).

### V. Application of Law to Facts

### A. Statute of Limitations

■ Plaintiffs' section 301–fair representation claim is not clearly barred by the statute of limitations. The *final* Opinion and Award of the third arbitrator was issued on October 16, 2003. He found that he could not "address the 1992 recall," because the Union had not filed a grievance within the sixty day time limit. 2003 Decision at 15. It matters not, as the Union contends, that plaintiffs did not file this lawsuit within six months of the 1992 Recall or during the intervening periods. The arbitrator's opinion established, for purposes of this motion, that whether plaintiffs would prevail in arbitration on their claims concerning the 1992 Recall was still at issue in the final arbitration proceedings.

The facts of this case implicate directly the court's reasoning in *Ghartey.* Even though the recall occurred in August of 1992, as late as October of 2003 plaintiffs were still awaiting an arbitrator's decision on whether they would prevail on their claims related to the 1992 Recall. For plaintiffs to have filed a lawsuit anytime before the final arbitration decision would have been "inefficient and premature." *Ghartey,* 869 F.2d at 163.

CWA points to the fact that more than a decade has passed since the 1992 Recall. But the enormity of the delay is due to many factors, including the unfortunate illness of the first arbitrator, the incomprehensible failure of the second arbitrator to

act, and the Union's lack of alacrity in pressing its claims.

Defendant AT & T argues that plaintiffs should have filed a complaint following the issuance of the 1994 Decision. When that order was handed down, however, it was unclear whether the "make whole" provision addressed the employees' claims bottomed on the 1992 Recall. Three years passed before the Union filed suit for clarification of the 1994 Order. It is arguable that during the intervening three years, the Union continued to represent plaintiffs, and that there was a substantial likelihood that the parties would be compelled to return to arbitration to resolve the matter. Thus, under *Ghartey,* the 1994 Decision cannot be considered the "final" arbitration decision.

The final arbitration decision was issued on October 16, 2003. Plaintiffs initiated this lawsuit on November 11, 2003. The statute of limitations can not be said, on this motion, to have been violated.

### B. Laches

■ The equitable doctrine of laches does not apply. "To determine whether [the plaintiff's] claims are barred by laches, the district court may wish to consider factors such as whether (and when) [the plaintiff] knew of [the defendant's] alleged misconduct, whether [the plaintiff] inexcusably delayed in taking action, and whether [the defendant] was prejudiced by any delay." *Brennan v. Nassau County,* 352 F.3d 60, 64 (2d Cir.2003). The defense of laches is not confined to equitable claims. *See, e.g., Oneida County v. Oneida Indian Nation of New York,* 470 U.S. 226, 262, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) ("[T]he application of laches ... will promote uniformity of result in *law* and at equity ....") (emphasis added); Black's Law Dictionary 879 (1999) (defining laches as "[u]nreasonable delay ... in pursuing a

58

right or claim—*almost* always an equitable one") (emphasis added). AT & T's contribution to the inexcusable delay in obtaining a final arbitration ruling leaves it with "unclean hands." *See, e.g., King v. Innovation Books,* 976 F.2d 824, 833 (2d Cir. 1992) ("unclean hands behavior" allows district court discretion to reject laches defense).

## C. Duty to Exhaust Intra–Union Remedies

■ Defendant has failed to satisfy the burden of proving that the factors listed in *Clayton* do not apply to its internal appeals process. It is not disputed by any party that plaintiffs did not utilize the intra-union appeals process when discovering that the union had not taken official action with regard to the 1992 Recall. But, under the second factor in *Clayton,* defendant has not shown that plaintiffs would be able to reactivate their grievance against AT & T through the intra-union process.

■ Plaintiffs suggest that utilizing the intra-union process would be futile—albeit for different reasons. As long as plaintiffs have disputed defendant's exhaustion claim based on inadequacy or futility, defendant must do more than show that the procedure is reasonable. *See Johnson v. Gen. Motors,* 641 F.2d 1075, 1080 (2d Cir.1981) ("In this case, Johnson does not claim inadequacy or futility of the appeals procedure. Accordingly, we need consider only the reasonableness of the intraunion remedy in light of all the circumstances."); *Rodriguez v. Int'l Broth. of Teamsters,* 1999 WL 816182, **4–5, 1999 U.S. Dist. LEXIS 15811 *11–*12 (S.D.N.Y.1999). Defendant has done nothing more than state that the internal rules and procedures are "straightforward," "simple" and "reasonable." (Def. Mem. at 16.) The Union has not shown that the internal procedures could reactivate plaintiffs'

grievance against AT & T or provide "complete relief sought in [their] § 301 suit." *Clayton,* 451 U.S. at 685, 101 S.Ct. 2088. Defendant's summary judgment claim that plaintiffs' suit is barred by their failure to exhaust intra-union procedures is not supported.

## D. Duty to Exhaust Contractual Remedies

■ A showing that a party has *attempted* to avail itself of the grievance procedures requires a reading of the relevant collective bargaining agreement. Plaintiffs claim that they communicated verbally to their union representatives that they should have been rehired as part of the 1992 Recall. They contend that the union representatives assured them that the union would take action on their behalf. *See* Clarke Aff. The Union contends that it did not know about the 1992 Recall in time to file a grievance, citing a footnote in the arbitrator's decision that states: "The fact that the Union was unaware of the recall does not change the fact that it was a grievable event." 2003 Decision at 15 n. 18. A parenthetical aside in a footnote is not an arbitrator's factual finding.

The CBA does not state that an employee's complaint to the Union must be in writing. Viewing the facts in a light favorable to plaintiffs, the CBA does not foreclose a finding that a verbal message constitutes an "attempt" to notify under the controlling and persuasive caselaw. If the Union has breached its duty of fair representation, as plaintiffs claim, then they would be relieved of the duty to exhaust contractual remedies. Summary judgment is not appropriate.

## E. Duty of Fair Representation

■ To find a breach of the duty of fair representation, the court must determine that 1) plaintiffs had a meritorious

grievance, 2) the Union was aware of the grievance, and 3) the Union acted arbitrarily in failing to process plaintiffs' grievance. *See, e.g., Young v. United States Postal Svc.*, 907 F.2d 305, 308 (2d Cir. 1990).

### 1. Merits of Grievance

 The parties disagree on whether plaintiffs' grievance has merit. Plaintiffs contend that they should have been re-hired by AT & T under the CBA during the 1992 Recall. Defendant AT & T argues that the 1992 Recall did not violate the CBA, and, consequently, the grievance is meritless.

The original arbitration decision found that the 1991 Layoffs should have utilized one seniority list rather than the two AT & T used. The parties are bound by that decision. By the time of the 1992 Recall, the "business unit" for which plaintiffs were employed was no longer in existence. Its employees were transferred into two separate business units with substantially the same job functions.

The CBA states that recalls "in the ... Organization ... within three years of the last layoff therein" shall be in "inverse order in which such employees were laid off." AT & T argues that "Organization" refers to the two separate business units, and claims that the 1992 Recall was properly based on two, separate seniority lists. AT & T proceeded to recall employees based on seniority within the two reorganized business units. Plaintiffs argue that since the arbitrator decided that the 1991 Layoffs should have utilized one, unified seniority list, then the 1992 Recall should have been based on that unified seniority list.

Although plaintiffs may have been the most senior out of a unified pool of workers laid off in 1991 from the old business unit, they were arguably not most senior within the newly organized units. AT &

T's position is that even if the arbitrator found that the 1991 Layoffs were done improperly, the 1992 Recall was not governed by that same seniority list.

Although AT & T contends that plaintiffs' grievance lacks merit as required under *Vaca*, the question is close enough to deny the motions for summary judgment. After representing plaintiffs in arbitration for more than ten years, the Union is now in the awkward position of having to argue that the grievance is meritless. In fact, the Union continued to argue until the very end plaintiffs' case before the third arbitrator. The final decision of the third arbitrator states: "The Union further responded that if the Grievants had been laid off properly at the time of the second 1991 layoff, they would have been recalled in August 1992 when the Company effected a partial recall ...." Peterson Aff. at Ex. 1 at 8. This is circumstantial evidence of the Union's belief in the merits of plaintiffs' grievance.

 Under *Young v. United States Postal Service*, evidence that the union thought a claim was valid can be used to show that the grievance was meritorious. *See Young*, 907 F.2d at 307–09. In *Young*, the court reasoned that the union had no reason to pursue vigorously a claim that lacked merit. *Id.* In the instant case, the Union continued to pursue plaintiffs' claim for more than a decade. This is substantial evidence rebutting AT & T's claim that the grievance is meritless.

The scope of this question is a narrow one of contract interpretation, but the entire is case may depend on it. Given the unsettled facts, it is premature to grant plaintiffs' motion for a declaratory judgment that AT & T breached the CBA.

### 2. Union's Awareness

 Summary judgment is inappropriate here where the court confronts a criti-

cal factual dispute. At least one plaintiff claims that she verbally informed her union representative of her grievance concerning the 1992 Recall. The Union claims that it was unaware of the 1992 Recall until many months and perhaps years had passed.

### 3. Were the Union's Actions Arbitrary?

 Whether the Union's alleged failure to process plaintiffs' grievance constitutes an "arbitrary" act is a question of fact, best preserved for trial. Under *Cruz*, a jury can determine that the Union's failure to process a grievance after sufficient verbal notice from employees is arbitrary and a breach of its duty. *Cruz v. Loc. Union No. 3 of the Int'l Broth. of Elec. Workers*, 34 F.3d 1148 (2d Cir.1994)

Here, the evidentiary discrepancies are too great to permit summary decision. Plaintiffs' and defendants' motions for summary judgment are denied.

### VI. Conclusion

All parties' motions for summary judgment are denied. No costs or disbursements.

Trial is set for September 20, 2004. A pretrial conference is scheduled for September 7, 2004. Oral instructions on discovery and other procedural preparations for trial have been given to the parties.

SO ORDERED.