**MATRIX ESSENTIALS, Plaintiff,**

v.

**QUALITY KING DISTRIBUTORS, INC., Bernard Nussdorf, Glen Nussdorf, and Stephen Nussdorf, Defendants,**

**Ruth Nussdorf, Pro's Choice Beauty Care, Inc. and GSN Trucking Corp., Non-party Respondents**

No. CV 90–1070.

United States District Court, E.D. New York.

Nov. 18, 2004.

Baker & Hostetler, LLP by George Stamboulidis, Esq., Fernando Bohorquez, Esq., New York City, for Plaintiff.

Bracken, Margolin & Gouvis, LLP by Linda Margolin, Esq., Islandia, NY, for Defendant Quality King Distributors, Inc.

Edwards & Angell, LLP by Ira G. Greenberg, Esq., New York City, for Pro's Choice and Ruth Nussdorf.

Tofel, Troup & Partners, LLP by Lawrence E. Tofel, Esq., New York City, for Marcy Blick and Robert Lee.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This case was commenced in 1990 by Matrix Essentials, Inc. ("Matrix"), the alleged predecessor in interest to present plaintiffs L'Oreal USA, Inc., L'Oreal USA Products, Inc., L'Oreal USA S/D, Inc. and L'Oreal Creative, Inc. (collectively "Plaintiff" or "L'Oreal"). The original complaint set forth causes of action in breach of contract, fraudulent inducement, misrepresentation and trademark infringement. These claims arose from allegations that Matrix products were properly sold only in so-called "professional" outlets and that defendants wrongfully acquired these products for resale to unauthorized retailers.

Named as defendants in the original complaint were Quality King Distributors, Inc. ("Quality King") and three of its principles, Bernard Nussdorf and his sons Glenn and Stephen Nussdorf (the "1990 Defendants"). The litigation between Matrix and the 1990 Defendants was concluded when the parties agreed to entry of a consent judgment and permanent injunction dated May 24, 1990 (the "1990 Injunction").

Presently before the court is the motion, *inter alia*, of L'Oreal to hold 1990 Defendants Quality King and Glenn Nussdorf in civil contempt for violation of the 1990 Injunction. This claim arises from alleged sales over the internet of Matrix products

and distribution of those products to retail stores throughout the country. L'Oreal also seeks to hold one individual and two corporate entities, who are not parties to this action (the "Non–Party Respondents"), in civil contempt for violation of the 1990 Injunction. The non-party individual respondent is Ruth Nussdorf, wife of the now-deceased Bernard Nussdorf. The non-party corporate respondents are Pro's Choice Beauty Care, Inc. ("Pro's Choice"), a company owned by Ruth Nussdorf, and GSN Trucking Corp. ("GSN Trucking"), a trucking company owned by, *inter alia*, Glenn and Stephen Nussdorf. In addition to the civil contempt motions, L'Oreal seeks an order of expedited discovery. For the reasons that follow, all motions are denied.

## BACKGROUND

### I. *The Parties and Their Businesses*

#### A. *L'Oreal*

Plaintiff L'Oreal alleges that it is the successor in interest to Matrix, the plaintiff that commenced this action in 1990. L'Oreal alleges that it succeeded to the interests of Matrix through a series of corporate transactions that began with the purchase by L'Oreal USA, Inc. of Matrix through a stock and asset purchase. This and subsequent corporate transactions have allegedly resulted in Plaintiff becoming the successor in interest to all rights, title and interest in all of Matrix's assets, including all intellectual property, agreements, contracts, claims and causes of action. As successor in interest, L'Oreal claims "any and all rights flowing from" the 1990 Injunction.

#### B. *The 1990 Defendants: Quality King, Bernard, Glenn and Stephen Nussdorf*

Quality King, a company engaged in the distribution of health and beauty aids, was founded in 1961 by Bernard and Ruth Nussdorf. Glenn and Stephen Nussdorf are their sons. Although the date upon which the Nussdorf sons acquired an ownership interest in Quality King is unclear, it is clear that after the death of Bernard Nussdorf and prior to February 22, 2001, Quality King was owned by Glenn, Stephen and Ruth Nussdorf and the estate of Bernard Nussdorf. Prior to February 22, 2001, Quality King owned, in addition to a health and beauty aids division, a professional hair products division. On February 22, 2001, the professional hair products division of Quality King was spun-off to Pro's Choice.

### C. *Non–Party Respondents Ruth Nussdorf and Pro's Choice*

As noted above, non-party respondent Ruth Nussdorf is the wife of Bernard Nussdorf and the mother of Glenn and Stephen Nussdorf. Pro's Choice is the corporate entity to which the professional hair products division of Quality King was transferred in February of 2001. The parties disagree and to the motivation behind this spin-off. The court presents below factual allegations regarding the spin-off that are supported by undisputed corporate documents and in the light most favorable to the non-moving parties.

Pro's Choice is a New Jersey corporation formed in January of 2001. Ruth Nussdorf is its sole director and shareholder. In a transaction claimed by Ruth Nussdorf to constitute a fair value exchange, she relinquished all of her interest in Quality King in consideration for the transfer of Quality King's professional hair care business to Pro's Choice.

Defendants and non-party respondents assert that the spin-off was in no way motivated by a desire to circumvent the terms of the 1990 Injunction. Instead, it

is asserted that the transfer was motivated by a dispute between Ruth Nussdorf and her children regarding the operation of Quality King. The spin-off allowed Ruth Nussdorf and her sons to operate two distinct and independent businesses, without each other's involvement.

After the spin-off, Pro's Choice entered into agreements with Quality King pursuant to which the latter company agreed to provide computer and data processing services to Pro's Choice. Pro's Choice also entered into an agreement providing for the lease of warehouse space at Quality King's warehouse facility at the rate of $33,689 per month. Pro's Choice has obtained its own line of financing and the employee benefit plans of Quality King have been separated so as to allow each company to independently provide benefits to its respective employees.

The affidavit of Michael Katz, the Executive Vice President of Quality King, states that since the spin-off, no officer, employee, representative or owner of Quality King has had any responsibility supervising or operating the business of Pro's Choice. He further asserts that "after a great deal of work by accountants and lawyers and much correspondence" with the Internal Revenue Service, government approval was obtained to approve the spin-off as a "tax-free 'split-off'" under the Internal Revenue Code.

### D. Non–Party Respondent GSN Trucking

GSN Trucking is a trucking company owned by Glenn, Stephen and Arlene Nussdorf. It is asserted that GSN operates as a common carrier and has, from time to time, contracted with Pro's Choice to ship products at a competitive rate. To the extent that GSN ever trucked Matrix products, it states that it did so only as a common carrier, did not make the decision to sell the product and, other than being paid for the shipping service, in no way benefited from the sales of the products. Ruth Nussdorf states that she has no interest in GSN Trucking.

### II. The 1990 Litigation

As noted above, the 1990 litigation asserted that defendants wrongfully acquired and distributed "professional use only" Matrix products. That litigation concluded when the parties thereto entered into the 1990 Injunction. That injunction prohibits the 1990 Defendants from, inter alia, purchasing, acquiring or selling products bearing the Matrix trade names or marks, including any products that might be manufactured by Matrix in the future, from representing or giving the impression that they are authorized to deal in those products, and from otherwise infringing on the Matrix mark or competing unfairly with the company. The 1990 Injunction does not prohibit the sale or distribution of non-professional Matrix products generally available for sale in retail outlets. In addition to binding the 1990 Defendants, the 1990 Injunction binds:

> "Defendants' agents, employees, servants, affiliates, representative, successors, assigns and all persons, firms and corporations over which any Defendant has any control or which are in active concert or participation with Defendants and receive notice" of the injunction.

### III. Factual Allegations In Support of Contempt Motion

Plaintiff claims that both the 1990 Defendants and the Non–Party Respondents have violated the 1990 Injunction by engaging in the marketing, sale and distribution of Matrix professional products.

As to Quality King, Plaintiff alleges that sales of Matrix products were available and purchased by a L'Oreal "undercover"

operative through Quality King's website. It is undisputed that shortly after the spin-off of Quality King's professional hair care division, Pro's Choice began to sell Matrix products. These products are widely available for sale by Pro's Choice to various retail outlets throughout the nation. In support of the allegation that Quality King is involved in the Pro's Choice sales, L'Oreal notes that the UPC codes on Matrix products sold by Pro's Choice bear the same UPC codes used by Quality King. L'Oreal seeks to implicate GSN in the alleged illegal activities because Pro's Choice contracted with GSN to ship Matrix products.

### IV. L'Oreal's Referral of the Violations to Law Enforcement

Plaintiff states that it began its investigation of the allegedly illegal sales in September of 2002. It is stated that purchases of Matrix products were made by L'Oreal in December 2003 as well as in January, July and August of 2003. Matrix products were allegedly purchased through the Quality King website in October and November of 2002 and in April of 2003. Plaintiff alleges that such products were available through the website as late as June of 2004.

Despite the fact that L'Oreal knew of possible violations of the 1990 Injunction in September of 2002, no action seeking an order of contempt was commenced at that time. Instead, L'Oreal states that seven months later, in April of 2003, it notified federal law enforcement authorities of their allegations that product diversion and violation of the 1990 Injunction amounted to criminal mail and wire fraud. L'Oreal's Director of Security has submitted an affidavit stating that the United States Attorney's Office and the FBI "accepted this matter for criminal investigation." He further states that L'Oreal and law enforcement reached an agreement pursuant to which L'Oreal would take no civil action "until after the criminal investigation was resolved." L'Oreal alleges that on or about June of 2004, a representative of the United State's Attorney's office informed L'Oreal that the company "need not feel further restrained from taking any action against Quality King based upon the ongoing criminal investigation." Shortly thereafter, these proceedings were commenced.

### V. The 2004 Order To Show Cause and Entry of the 2004 Injunction

On June 10, 2004, Plaintiff's counsel appeared before this court, by way of an *ex parte* order to show cause, seeking to hold the 1990 Defendants, Ruth Nussdorf, Pro's Choice and GSN Trucking in civil contempt for violation of the 1990 Injunction.[1] The *ex parte* showing in support of that request led the court to sign an order for all defendants named therein (both 1990 Defendants and the Non–Party Respondents) to show cause why they should not be held in contempt of the 1990 Injunction (the "June 2004 Order"). The June 2004 Order set a return date of June 16, 2004 and restrained both the 1990 Defendants and the Non–Party Respondents from violating the 1990 Injunction. The order further restrained them from taking specific actions with respect to certain products and business records.

### VI. The Lifting of the 2004 Order

On June 16, 2004, Plaintiff, the 1990 Defendants and the Non–Party Respondents appeared before this court in re-

---

1. The order to show cause also sought relief against non-parties Marcy Blick (the President of Pro's Choice) and Robert Lee. The papers presently before the court appear to have abandoned any claims against these two individuals.

sponse to the order to show cause. Upon review of the submissions, the court held that the injunctive relief granted in the June 2004 Order should be lifted. The court's opinion lifting the injunction noted that Plaintiffs included individuals as defendants who were not named in the 1990 action. The court stated that if Plaintiff wished to proceed against such individuals and entities, those parties were required to be brought before the court in a new action. In that new action, Plaintiff would be free to allege any appropriate legal theory in support of the claim that the Non–Party Respondents should be bound by the 1990 Injunction. The court further expressed the opinion that Plaintiff was free to pursue in the new action any claim they may have against the 1990 Defendants for any alleged violation of the 1990 Injunction. That injunction, it was noted, remained in effect against those defendants who continued to be bound by its terms.

## VII. *The Present Motions*

Plaintiff has commenced no new action. Instead, L'Oreal has chosen to adhere to its original theories of liability and seeks to hold both the 1990 Defendants and the Non-party Respondents in civil contempt for violation of the 1990 Injunction. Plaintiff continues to press its claims against original 1990 Defendants Quality King and Glenn Nussdorf on the theory that Quality King website sales of Matrix products violated the 1990 Injunction. Liability is asserted against Pro's Choice and Ruth Nussdorf on the ground that they are successors in interest to Quality King who had, at least, constructive notice of the 1990 Injunction. All Non–Party Respondents are also argued to be properly held in contempt on the ground that they are aiding and abetting violations of the 1990 Injunction by Quality King and/or Pro's Choice.

## DISCUSSION

### I. *L'Oreal May Pursue This Action At This Time*

As a preliminary matter, the court addresses the claim of Defendants regarding the standing of L'Oreal to assert the rights of Matrix and enforce the terms of the 1990 Injunction. Defendants take issue with the documentation supplied by Plaintiff in support of this alleged right. The court has reviewed the corporate documents submitted and holds, at this stage of the proceedings, that L'Oreal has submitted sufficient documentation on this issue. Accordingly, the court declines to dismiss this action for lack of standing. If, after discovery, further evidence is uncovered to support Defendants' standing claim, that evidence will be considered. At this time, however, the court will not dismiss the action and will allow L'Oreal to assert the rights of Matrix pursuant to the 1990 Injunction.

### II. *Civil Contempt*

#### A. *General Principles*

■■■ A party will be held in civil contempt of a court order only upon a showing of "clear and convincing" evidence of a violation of "a clear and unambiguous" order of the court. *New York v. Local 28, Sheet Metal Workers' Internat'l. Assoc.,* 170 F.3d 279, 282–83 (2d Cir.1999) (citation omitted). Although the violation need not be shown to have been wilful, the alleged contemnor must have failed to exercise "reasonable diligence" in attempting compliance. *Id.,* quoting, *United States v. Local 1804–1,* 44 F.3d 1091, 1096 (2d Cir. 1995); *see also Panix Promotions, Ltd. v. Lewis,* 2004 WL 421937 *2 (S.D.N.Y.), *aff'd. mem.,* 106 Fed.Appx. 757, 2004 WL 1922197 (2d Cir.2004); *O'Hearn v. Bo-*

*dyonics, Ltd.,* 56 F.Supp.2d 302, 312 (E.D.N.Y.1999); *Cablevision Systems Corp. v. Muneyyirci,* 1995 WL 362541 *1 (E.D.N.Y.1995).

 In the context of civil contempt, clear and convincing evidence is interpreted to mean "a quantum of proof adequate to demonstrate to a 'reasonable certainty' that a violation has occurred." *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir.2002) (citation omitted). Three defenses to civil contempt are: (1) the order allegedly violated in unclear; (2) the party charged with contempt had no knowledge of the order or (3) proof of non-compliance fails to meet the clear and convincing standard of proof. *Id.* at 251.

### B. *Liability of Non–Parties*

### 1. *General Principles*

 Non-parties may be held in civil contempt of a court ordered injunction on the grounds that they are either: (1) successors in interest to parties bound by the order or (2) aiders and abettors to a violation of the order by a party thereto. *See generally Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945). This common law principle is codified in Rule 65 of the Federal Rules of Civil Procedure which provides that orders are binding upon parties to the order and their "officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R.Civ.P. 65(d). The party seeking to enforce the terms of an injunction against a non-party bears the burden of showing that the person sought to be enjoined is properly within the scope of the injunction. *People v. Operation Rescue National,* 80 F.3d 64, 70 (2d Cir.1996).

### 2. *Successor Liability*

 Where a corporation is party to an injunction, that injunction will bind corporate agents so long as they are acting on behalf of the corporation. *Operation Rescue,* 80 F.3d at 70; *United States v. Paccione,* 964 F.2d 1269, 1274 (2d Cir.1992). Where an agent ceases acting on behalf of the corporation, he is no longer bound by the injunction. That is, however, so long as the agent has not disassociated himself from the corporation for the purpose of circumventing the order. Where mere "superficial" changes in corporate name or form have been made, the court may enforce an injunction against a successor to the bound corporation. *Id.* Thus, where successors and assigns are no more than "instrumentalities through which defendant seeks to evade an order," they are brought within the class of persons who may be subject to a finding of contempt. *Regal Knitwear,* 324 U.S. at 14, 65 S.Ct. 478; *see, e.g., Cablevision Systems Corp. v. Muneyyirci,* 1995 WL 362541 *2 (E.D.N.Y.1995) (holding non-party corporation in contempt of court order where defendants subject to the order controlled the operations of the corporation and used corporation as "device to circumvent" the order).

 The issue of whether or not a successor may be held liable for violation of an injunction depends upon whether there is a "substantial continuity of identity" between the bound corporation and the alleged successor. *Operation Rescue,* 80 F.3d at 70; *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1355 (Fed.Cir.1998). The relevant question is whether the individual sought to be held liable is acting independently or remains "legally identifiable" with the corporation bound by the injunction. *Cablevision Sys. Corp. v. Muneyyirci,* 1995 WL 362541 *1 (E.D.N.Y.1995).

This is a case-specific inquiry that turns upon whether or not the individual is "so identified in interest with those named in the decree that it would be reasonable to conclude that [his] rights and interests have been represented and adjudicated in the original proceeding." *Additive Controls*, 154 F.3d at 1352 (citation omitted). Factors to be considered include the non-party's position and responsibilities with the enjoined corporation, his participation in the original litigation and the similarity between the activities of the corporation and those of the non-party. *Id.*

### 3. *Aider and Abettor Liability*

■ It has long been held that one who, with actual notice of the order, "knowingly assists a defendant in violating an injunction subjects himself to civil ... proceedings for contempt." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930); *see Levin*, 277 F.3d at 250. For such entities to be held in contempt they must aid and abet the party named in the order ...." *Operation Rescue*, 80 F.3d at 70, quoting, *Alemite*, 42 F.2d at 832; *Paramount Pictures Corp. v. Carol Publishing Group, Inc.*, 25 F.Supp.2d 372, 374 (S.D.N.Y.1998), *aff'd. mem.*, 181 F.3d 83, 1999 WL 319328 (2d Cir.1999). Thus, a non-party who is alleged to have acted in concert to aid and abet a violation of an injunction can be held in contempt only upon the "predicate" finding that the enjoined party has violated the order. *Levin*, 277 F.3d at 250. Contempt will not lie against one who "acts independently and whose rights have not been adjudicated." *Paramount Pictures Corp.*, 25 F.Supp.2d at 374, quoting, *Heyman v. Kline*, 444 F.2d 65, 65–66 (2d Cir.1971).

### III. *Disposition of the Motions*

#### A. *Laches*

■ Before considering the merits of the contempt motions the court addresses the argument that Plaintiff's claim is barred by the equitable doctrine of laches. This defense turns upon whether there was unreasonable and inexcusable delay resulting in prejudice to the party against whom the decree is sought to be enforced. *See Brennan v. Nassau County*, 352 F.3d 60, 64 (2d Cir.2003); *Clarke v. Communications Workers of Am.*, 318 F.Supp.2d 48, 57 (E.D.N.Y.2004).

In support of the laches argument, it is argued that despite L'Oreal's knowledge of the alleged violations of the 1990 Injunction in September of 2002, this action was not commenced until June of 2004. L'Oreal explains this delay on its alleged agreement with law enforcement authorities to defer its civil action until resolution of the criminal investigation. Defendants counter that this agreement does nothing to explain the seven month delay in referring the matter to the criminal authorities.

Application of the laches defense is a fact specific inquiry that cannot be decided on the basis of the record that is presently before the court. The court holds, therefore that this matter cannot be dismissed, at this time, based upon laches alone. Consideration of this defense must await further factual development.

#### B. *Disposition of the Contempt Motion as to The 1990 Defendants*

■ The court has reviewed the parties' submissions and notes that the only evidence pointing strongly in favor of a finding that the 1990 Defendants violated the 1990 Injunction is the evidence relating to website sales of Matrix products. It appears that once those sales were brought to the attention of Quality King in June of 2004, the website was closed down to remove Matrix products.

The evidence seeking to hold the 1990 Defendants liable by linking sales by Pro's Choice to Quality King is somewhat tenuous. That evidence is based upon the two companies' usage of the same UPC codes and seeks to impute Pro's Choice sales to Quality King on the basis of these codes. Defendants have adequately refuted those allegations at this time and further facts must be developed for the court to assess adequately the merits of this claim.

In sum, discovery must be taken and facts further developed for the court to determine whether or not violations took place and whether such violations were *de minimus*, inadvertent and/or promptly cured. Additionally, it is yet to be determined whether the 1990 Defendants failed to exercise "reasonable diligence" in attempting compliance. Under these circumstances, the court declines to hold the 1990 Defendants in contempt of the 1990 Injunction at this time.

### C. Disposition of the Contempt Motion as to the Non–Party Respondents

■ As the legal discussion above makes clear, an injunction may neither bind "the world at large," *Alemite Mfg.*, 42 F.2d at 832, nor be nullified by carrying out prohibited acts through successors or aiders and abettors, *Regal Knitwear*, 324 U.S. at 14, 65 S.Ct. 478. Successor and/or aider and abettor liability as to the Non–Party Respondents turns upon facts that cannot be determined definitively at this time.

■ An important fact at issue is Ruth Nussdorf's participation in this litigation in 1990 and her knowledge of the terms of the 1990 Injunction. Indeed, this Non–Party Respondent has submitted an affidavit stating that when Pro's Choice began to sell Matrix products, she had no knowledge that Quality King had consented to an injunction, eleven years earlier, prohibiting its sale of such products. She further states that the first time she became aware of the 1990 Injunction was in June of 2004, when she was first served with the papers in this contempt motion.

Also at issue is the motivation behind the spin off of Quality King's professional division to Pro's Choice, as well as the degree to which Pro's Choice and the other Non–Party Defendants may be held "legally identifiable" with Quality King. Additionally, any aider and abettor liability can be imposed only if the court holds that those actually bound by the 1990 Injunction have violated its terms—a holding that has yet to be made. In view of the presence of important issues of fact, the court will neither hold Non–Party Respondents in contempt nor dismiss this action as to them at this time.

### D. Motion for Expedited Discovery

The parties have submitted substantial affidavit and documentary evidence in support of their respective positions. The court cannot say that either side has made an argument requiring that judgment be rendered at this time. Accordingly, the court will order that the parties proceed to discovery in preparation for a trial on the merits.

■ The court sees no need to enter an order for "expedited" discovery. L'Oreal has known of the alleged violations of the 1990 Injunction since 2002 and failed to commence an action or seek any order from this court until 2004. There is no indication that either the 1990 Defendants or the Non–Party Respondents are destroying relevant documents. To the extent that L'Oreal has any such concerns, those concerns can be properly addressed to the Magistrate Judge to whom this case is assigned. Additionally, the parties will find that this court's calendar is up to date

and an early trial date will be assigned even in the absence of a specific order for expedited discovery.

### CONCLUSION

Plaintiffs' motions for civil contempt and expedited discovery are denied. The Clerk of the Court is directed to terminate all pending motions in this matter and to designate a Magistrate Judge to handle all discovery and non-dispositive pretrial matters. Upon such designation, the parties are directed to contact the chambers of the Magistrate Judge for the purpose of holding an initial conference and entering into an appropriate discovery schedule.

SO ORDERED.